Good morning, Your Honors. Katherine Young from the Federal Public Defender's Office for Appellant Adam Battani. I have five minutes and I would like to reserve a minute of my time for rebuttal. I'd like to turn first of all to Mr. Battani's claim that the District Court erred in applying an enhancement for sophisticated money laundering under Section 2S1.1. Application Note 5 describes sophisticated laundering as complex or intricate offense conduct pertaining to the execution or concealment of the money laundering offense. And Application Note 5 states that sophisticated money laundering typically involves fictitious entities, shell corporations, two or more levels, i.e. layering of transactions, or offshore financial accounts. Don't we have all of those? I'm sorry, Your Honor? Don't we have all of those in this case? No, in fact, Your Honor, we contend that none of them exist. Fictitious entities and shell corporations are not alleged to be part of the money laundering operation. The government did claim that two or more levels or layering occurred, but it wasn't ever proved. And I want to focus on the language of the Application Note, because you notice that it says twice, levels and layering. That means one on top of another. Both of the – and both of those concepts are repeated twice in the Application Note to the Guideline. And in this case, there was no proof of any levels or layering of laundering. Is that, in your view, an absolute requirement? It's not an absolute requirement, Your Honor. And what is our standard of review? The standard of review is – Don't we review for abuse of discretion? Yes, Your Honor. Okay. But in this case, you have to look at – the government's cases all show that layering is, for example, many multiple transactions on the same day, or even over a period of time, where you channel and the government traces the same funds through the levels or layers of laundering. But the Application Note begins by just saying it's complex or intricate. Yes, Your Honor. And it has some examples of what's complex or intricate. So why isn't what happened here – doesn't it fall under the rubric of complex or intricate? Because I think there was nothing that was complex or intricate that was proved. If you look at the description of exactly what happened in terms of laundering, they – the government, first of all, repeats some of the elements of the offense. The government contends in the indictment, in the plea agreement, in the plea colloquy, that the initial transfers between accounts was part of the offense. The probation officer in the government's confidential sentencing documents also describes the initial transfers between one bogus account to another to the defendant's account as extracting the money from the offense. So they're – the first transfers are extracting the money, not laundering it, but getting the money from the offense. And the government's authority, Miles, tells us that we've got to make sure that we don't turn the money laundering statute into a money spending statute. You have to distinguish between actually spending the proceeds of the offense versus laundering the proceeds of the offense. And so the initial transfers were extracting, as the – as the probation officer says, and as the government's indictment and plea colloquy suggests. But when you talk about initial transfer, which – what are you talking about? Because this really is a very complicated scheme. Yeah. Well, what they did was they had direct refunds deposited into bogus bank accounts. And then they extracted or transferred the money to – using checks or to A-leases to get the money into their own accounts. Or they withdrew it from cash. You're talking about the transfer from the bogus accounts to their accounts. Yes. That, as alleged in the indictment, the plea colloquy, and the probation officer, is extracting the money. It's getting the money from the offense. So that's not part of the laundering operation. That's part of the offense itself. Well, I – I guess I don't understand why getting the money from the IRS isn't – isn't the first step. Well, because I think it's part of the offense. We can't turn money laundering into the offense itself. They have to get the proceeds from the offense before they can launder those proceeds. And that's our position. And, you know, the Miles case tells you you can't just turn a money laundering statute into a money spending statute. Otherwise, every offense would be a money laundering offense. You have to have the funds before you can launder them. You're down to your five minutes for your colleague, I think. Okay. Thank you, Your Honor. Then I'll reserve the remainder of my time. Good morning, Your Honor. It's John Lemmon for San Botani. Because Congress deliberately omitted the seriousness of the underlying offense from the revocation statute, this Court has held that a district court may not impose a revocation sentence based primarily on the severity of the underlying new criminal offense. Here, San Botani's guidelines range was 6 to 12 months. Adam Botani's was even less at 4 to 10 months. But U.S. Probation recommended the statutory maximum of 24 months expressly because of the number of felony violations underlying the revocation, 6. The district court did impose the maximum sentence for both brothers, stating that they are an extreme financial danger to the community. The question before this Court is whether it should reverse the revocation sentences because they were primarily driven by the underlying offense conduct. In United States v. Simtob, this Court held that a district court may not impose a revocation sentence solely or even primarily based on the severity of the new criminal offense underlying the revocation. And part of the reason for that is that the seriousness of the underlying offense is already taken into account under 7B1.1 of the guidelines. So here the Botani brothers were facing grade B revocations for the new law violations. But isn't it a permissible consideration that the Court looked at the fact that they were barely out from one set of crimes when they committed the next, which is sort of typically not deserving the trust of the Court? Isn't that really the main reason that the Court gave? Well, I think that the line starts to blur between the recency of the new offense being part of the breach of trust analysis. Well, isn't that what the Court said here? You just came out and started right in again. And why isn't that a permissible reason? Like obviously it's not working. Well, the Court did make that observation, although I would have said to the district judge in Nevada a couple of years before. So I think some of that was speculative. But again, I think that the exception starts to swallow the rule here when you have, you can take into account recency to go above the guidelines range. You can take into account the need to protect the community to go above the guidelines range, all of which is based on the underlying offense conduct. So I understand what Your Honor is saying. I think that the exception swallows the rule at that point. Clearly, both these gentlemen were facing guidelines ranges of half or the upper end of the guidelines range was half or less than half of what the Court imposed. This was driven by the underlying offense conduct. Just briefly, I'd like to touch on the public intoxication offense that Sam Batani was convicted of that the Court counted as a criminal history point. In United States v. Martinez, this Court presumed that 647F was a public intoxication offense, not a disorderly conduct offense, in contrast to Health and Safety Code section 11-550 and that it therefore never scores. In United States v. Coleman, the Court did the same thing in the context of 647H, finding that it was not disorderly conduct, but a loitering offense in contrast to vandalism and therefore it never scored. So Mr. Batani, Sam Batani should have had one fewer criminal history point, which could have affected the Court's analysis. And I see that I am running low on time and I will cede the remainder of my time to, unless the Court has additional questions, I'll cede the remainder of my time to Ms. Good morning, Your Honors. May it please the Court, Anne Luwato-Wolf on behalf of the Government. Other than the Evans-related error, which this Court can correct, the District Court did not commit any error in sentencing the defendants. First, with respect to the two-level enhancement for sophisticated money laundering, that was properly applied because here we have not only layered transactions, we also have the use of offshore accounts. Either one would justify application of the sophisticated money laundering enhancement. So the steps are, it goes into the bank account from the Government, and then it goes into another bank account, and then it goes to transactions or purchase of stuff or transfers overseas, and that's the second? Yes, Your Honor. So what I refer to as the bogus bank accounts are the 70-plus bank accounts that the defendants opened at five different banks in the names of the deceased taxpayers. So the money from the IRS went into those accounts. Defendants then admitted that they then transferred the money amongst those accounts in a variety of ways. One of the ways was that they would write checks from one deceased taxpayer to another deceased taxpayer and then move the money by depositing it from one, so in other words, the IRS, they would then move that money into another. I just wanted to clarify, so the laundering starts after the money is in the accounts from the IRS? Correct. That's when it starts. So we receive the money from the fraudulent scheme and then the money laundering begins. So then it's moved from one account to another. They make multiple cash withdrawals all the time, both of the defendants, from these accounts. They purchase silver. They purchase money orders, and they wire the money to offshore accounts in Denmark and Lebanon and other locations. With regard to the statutory maximum 24-month sentence that the court imposed for the supervised release violations, the court made it very, very clear that she was considering only permissible factors. First of all, and I think most significantly, the immediate resumption of fraudulent and money laundering activities after their release from previous five-year sentences imposed in the District of Nevada for executing another fraud and money laundering scheme where the losses were over $5 million. So as the court noticed, stated, the defendant's history of broken promises and lack of intent to lead law-abiding lives was not only an enormous breach of the court's trust, but the court wanted to also attempt to deter defendants from engaging in similar conduct yet again and protection of the public from the extreme financial danger posed by the defendants, all permissible factors. The guidelines themselves, of course, recommend that the sentence or the term for a supervised release violation run consecutive to the term that is imposed for the underlying offense, which is what the court did here. And the probation officers themselves recommended the 24-month statutory maximum because of the extreme breach of trust, the deterrent value, and the need to protect the public. Finally, with regard to Sam Batani's disorderly conduct conviction, first and foremost, it's entirely harmless. The one point that was imposed did not increase Sam Batani's criminal history category. The district court never even mentioned it during, in fact, no one mentioned it during the sentencing hearing. So it is entirely speculative that it weighed at all in the court's determination. The court elaborated on the reasons for the sentence imposed, and again, it takes up multiple pages of the transcript. No one ever mentioned this conviction. But in addition to that, it is disorderly conduct is one of the specifically listed offenses in Sentencing Guidelines Section 4A1.2C as accountable offense. It is not merely generic public intoxication as defined by Black's Law Dictionary as being under the influence in a public place. Rather, California Penal Code Section 647F, like the other offenses listed in 4A1.2C, adds the critical element that the offender endangers the public, himself, or interferes with the public right-of-way. In Martinez, it was the defendant who argued that Health and Safety Code Section 11-550A, a conviction for being under the influence of a controlled substance, was similar to the defendant argued was a non-countable public intoxication offense, and this court rejected the defendant's argument. Coleman is unpublished. It's not precedent. The discussion of California Penal Code Section 647 was dicta, and again, the court was discussing the unlisted crime of vandalism, and again, the court rejected the defendant's argument. And unless the defendant's argument is unlisted, there is no reason for the defendant to be un-published. I don't believe we do. Thank you. Ms. Young? Thank you, Your Honors. I just want to touch briefly on two points. And first of all, I want to turn to the offshore accounts. The guideline states that offshore accounts may be a form of sophisticated money laundering, and I think that's intended to be offshore accounts that are intended for the purpose of concealing the source of the funds, because that's the whole point of money laundering. In this case, the defendants did not have offshore accounts. If you look at the indictment, the plea colloquy, the plea agreement, they were wiring money to individuals overseas, not to accounts that they held, but to individuals. And defense counsel argued during sentencing that this was possibly repayment of loans. Those accounts were not controlled by the defendants, so they weren't within the contemplation of the statute. Well, why does that matter if I use the money to buy a Cadillac or I use the money to pay a debt? I'm not really sure why that is any less culpable in the circumstance, and why it isn't still a more complex scheme when the money goes overseas and cannot be recovered. Well, I think it's the key distinction between money spending and money laundering. If they're paying debts with it, they're not laundering it, they're spending it. Because if you turn spending into laundering, then everything is laundering. And that's the mild case. Well, what you're really arguing is that they shouldn't even be guilty, but they are, so. I'm not arguing that they're not guilty. I'm sorry. But what I'm arguing is that it's not sophisticated. All they proved, in addition to the offense itself, and the offense itself involved transfers between accounts, because that was for the purpose of concealing the offense itself, not concealing the source of the funds, which is money laundering. What I'm arguing is that it wasn't sophisticated. All the government proved, in addition to the transfers, was purchase of a few silver bars, purchase of sending money to individuals overseas, and all those things do not amount to sophisticated laundering. In the cases — I'm sorry. What do we know about who those individuals were? All we know in the record is that they were wiring to individuals overseas, Your Honor. Thank you, Counsel. Thank you. The case just argued is submitted, and we appreciate the helpful arguments from all three of you.
judges: Schroeder, Graber, Watson